THE HONORABLE JUDGE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS HENNEMAN,

               Plaintiff,

-vs-

KITSAP COUNTY, a Municipal Corporation,

               Defendant.

NO.  3:17-cv-05066-RBL

KITSAP COUNTY'S MOTION FOR
SUMMARY JUDGMENT

NOTE ON MOTION CALENDAR:
April 27, 2018

KITSAP COUNTY, by and through its undersigned attorneys, and pursuant to Fed.R.Civ.P. 56, submits this motion for summary dismissal of all claims asserted by Plaintiff.

## I.   ISSUES

Based on the claims contained in Plaintiff's Complaint, the issues for consideration in this motion are as follows:

A.    Claims under Washington's Law Against Discrimination.

1.    Disparate Treatment.   Did Kitsap County terminate Dennis Henneman from employment because of his age and disability in violation of Washington's Law Against Discrimination (WLAD), RCW 49.60.180?  Complaint, Dkt. 1-3, pp. 3-4, ¶¶3.2-3.7.

2.    Retaliation.  Did Kitsap County retaliate against Dennis Henneman in violation of

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros

WLAD for having a disability, for requesting a reasonable accommodation, and because of his age? Complaint, Dkt. 1-3, p.4, ¶¶3.8-3.13.

3.    <u>Failure to Accommodate a Disability</u>.  Did Kitsap County take adverse action in violation of WLAD when it failed to accommodate Dennis Henneman's mental health limitation by failing to engage in the interactive process with him and by terminating him for having a disability?  Complaint, Dkt. 1-3, p.4, ¶¶3.14-3.16.

B.    <u>Claims under the Americans with Disabilities Act</u>.

1.    Did Kitsap County take adverse action against Dennis Henneman in violation of the Americans with Disabilities Act (ADA) when it failed to accommodate his disability by failing to engage in the interactive process with him and terminating him for having a disability? Complaint, Dkt. 1-3, p. 5, ¶¶3.17-3.19.

## II. FACTS

Dennis Henneman began working as a Kitsap County correctional officer in 1990.  In 2011 he applied for the specialty position of background investigator, and after a competitive recruitment, was selected to conduct background checks of candidates for employment with the Sheriff's office. Declaration of Ned Newlin, Exhibit A.[1]

On October 3, 2014, Henneman[2] approached Corrections Sergeant Craig Dick asking what Henneman should do when he is stressed out.  Henneman informed Sergeant Dick that a new database program for background investigations was not working for him and asked if he could go back to doing them the old way on paper.  Declaration of Roxane Payne, Exhibit A.  Dick recommended Henneman speak with the program managers or Chief of Corrections.  Id.

---

[1] Training records establish Officer Henneman received regular training in conducting background investigations, in suicide prevention, and in mental health, crisis intervention, and conflict management.
[2] We will generally refer to individuals by their last name only.  No disrespect is intended.

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 2

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

On October 6, 2014, Henneman approached Officer Shawn Buzzell, a coworker and vice-president of the union, about Henneman's specialty position as a background investigator, complaining that it was taking a toll on him and his family. Declaration of Roxane Payne, Exhibit B. Henneman then stated to Officer Buzzell "you would think after Andra, they would take the hints." When Buzzell asked whether Henneman was feeling like Andra did, Henneman answered "yes, I am." As he said this, Henneman was emotional and crying. Henneman's statement was particularly concerning to Buzzell for the reason that Corrections Officer Andra Griffo had committed suicide only three months before. Out of a genuine concern for Henneman's mental state, Buzzell reported Henneman's comments to Lieutenant Roxane Payne. Id.; Payne Declaration, Exhibit C.

Shortly after Buzzell reported Henneman's comments to Lieutenant Payne, she spoke with Henneman who confirmed the statements he had made to Buzzell. Payne Declaration, Exhibit C. Henneman became emotional again and tearful, but denied being suicidal. Lieutenant Payne asked Henneman if he would speak with the on-duty mental health professional. Henneman agreed. Id.

Mental health worker John Perona evaluated Henneman shortly thereafter. After his meeting with Henneman, Perona informed Lieutenant Payne that he did not have any concerns that Henneman was suicidal, but Henneman should be removed from his specialty position as a background investigator and consult with his personal physician. Id. After receiving this information from Perona, Lieutenant Payne informed Henneman that he would be removed of the background investigator duties as he requested, and sent home so he could follow up with his physician and return to work when his doctor cleared him to do so. Id. After departing the jail, Henneman went to the Human Resources department and obtained a Family Medical Leave Request Form. Declaration of Nancy Buonanno Grennan, Exhibit A.

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

After the County received certification from his health care provider that he qualified for FMLA leave, Henneman was approved for leave for the period of October 6, 2014 through December 24, 2014. Declaration of Nancy Buonanno Grennan, Exhibit B. FMLA leave was later extended to December 29, 2014. Grennan Declaration, Exhibit C. Human Resources personnel notified Henneman that although his FMLA would expire on December 29, if he needed leave beyond that date he could provide additional medical documentation as "he may qualify for certain ADA accommodations at that time." Id. On December 24, Human Resources received a request to extend Henneman's leave of absence to January 2, 2015. Grennan Declaration, Exhibit D.

On December 29, the County received a request from Henneman seeking light duty for thirty days upon his return to work. Henneman's request was granted, and effective January 2, 2015, Henneman was assigned to work in the control room, swing shift, with same days off as he had had on graveyard shift. Declaration of Genie Elton, Exhibit A.

Henneman worked without incident between January 2 and January 13. On January 9, County records show Henneman sent an email from his work address to his home address with a draft letter of resignation. Declaration of Jacquelyn Aufderheide, Exhibit A. On or about January 12, Henneman had a conversation with Officer Taylor that he was contemplating resigning his employment. Elton Declaration, Exhibit C.

Just before his shift on January 13, and at his request, Henneman met with Chief Newlin and Lieutenant Genie Elton where he announced his "retirement." Elton Declaration, Exhibit B. He stated he intended to separate service on January 27, and wanted to give advance notice so he could separate on "good terms." Id. According to Lieutenant's Elton's notes, Henneman was not wavering or undecided in any fashion, he was resolute. Henneman said he was to meet with Sheriff Gary Simpson at 4:00 p.m. later day and would give his formal written notice to the Sheriff at that

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 4

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

time.  Henneman said he did not intend to work in the law enforcement arena any longer. Henneman became tearful and spoke of his plan to "find the tough guy" he "had lost."  He said that somewhere along his career he had changed and the "tough guy" he once knew was lost and he wanted to regain that strength.  He said he had thought long and hard about the decision to retire.  Id.

After the meeting with Newlin and Elton, Henneman requested he be issued a retirement card.  Newlin Declaration, Exhibit B.

Later that afternoon, Henneman met with Sheriff Simpson and delivered his notice of resignation.  Aufderheide Declaration, Exhibit B.  His resignation letter reads:

> This is my Notice of Resignation (retirement) with my final day of work being 27, January 2015.  At this time I am retiring from Law Enforcement but I will not be drawing my retirement account.  I do plan to continue working in a different line of work.  I thank you for the opportunity you have given me to be employed as a Corrections Officer for the people of Kitsap County. At this time I wish that my Resignation not be disseminated to my fellow officers.

Id.  Later, the Sheriff described Henneman's demeanor during the meeting:

> He was very clear in his plans for the future, was adamant that it was in his best interests to move on and seek other employment opportunities, and out of respect for my position, he wanted to present his decision to me personally. He was calm, controlled, and presented rational and articulable reasons for his resignation.  I accepted his resignation, commended him for his years of military and civilian service to the Sheriff's Office and wished him well in his future endeavors. . .

> When Officer Henneman presented me with his letter of resignation, he indicated that over the past several months he realized it was time for him to retire, that the job was not like it was before and he was not happy continuing to work in this profession. He was tired of the job, he was dissatisfied in what he was doing, found himself being disenchanted and was in fact "disgruntled" with his current circumstances.  He was excited to look for new opportunities outside law enforcement and shared his plans to begin training as a long haul truck driver.  It was obvious to me he was tired of his job, was ready to move on and had specific plans for the future.

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT (CASE NO. 3:17-CV-05066-RBL), PAGE 5

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros

Aufderheide Declaration, Exhibit G.

The Sheriff accepted Henneman's resignation during the January 13 meeting. Aufderheide Declaration, Exhibits C and G.   Two days after the meeting, the president of the union, Ken Watkins, sent an email to the Sheriff wanting to discuss Henneman's resignation, acknowledging "I realize that you accepted his resignation . . .", but Henneman has changed his mind and wants to discuss the extenuating circumstances behind his decision. Aufderheide Declaration, Exhibit C.

On January 21, Henneman submitted a letter to Sheriff Simpson requesting rescission of his retirement resignation: "[a]fter careful consideration and discussion with my family it is not prudent for me at this time to retire." Aufderheide Declaration, Exhibit D.

The next day, a meeting was held between the Sheriff, Chief David White, union president Ken Watkins, and Henneman regarding retraction of Henneman's retirement. After that meeting, the Sheriff issued a letter to Henneman summarizing statements made by Henneman during the January 22 meeting: Henneman had made a rash decision, one not discussed with family members or others, and made during a period of being "disgruntled." Aufderheide Declaration, Exhibit E. In the letter, the Sheriff confirmed Henneman's last day of employment on 01/27/2015, "until such time Chief Newlin and I are able to review this recent dilemma . . ." reasoning that "[Chief Newlin] is much closer to the circumstances of your work history and the agency's operations needs and will be very much involved in the final outcome." Id. The letter closes by clarifying Henneman's employment status:

> At the end of your shift January 27, 2015, you are considered 'retired'. Because of the current circumstances, your request for rescinding your notice of resignation has essentially become a request for reinstatement. . .

Id.

On January 27, Henneman submitted a letter to the Sheriff requesting reinstatement of his

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 6

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

employment "as a reasonable accommodation for my disability . . . I submitted my letter of resignation while I was suffering from an aggravation of depression and [PTSD], conditions Kitsap County was aware of and for which I had recently been on FMLA approved leave." Aufderheide Declaration, Exhibit F.

On February 5 Chief Newlin issued a letter denying Henneman's request for reinstatement. Newlin Declaration, Exhibit C.

### III.   AUTHORITIES AND ANALYSIS

A.   Summary Judgment Standards.

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact that would preclude the entry of judgment as a matter of law. The party seeking summary dismissal of the case "bears the initial responsibility of informing the district court of the basis for its motion," and identifying those records that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(a)-(c). Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323-324, 106 S.Ct. 2548 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose"). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir.2001); *quoting Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216,

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 7

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

1220 (9th Cir.1995); *and citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d at 919; *quoting Triton Energy Corp. v. Square D Co.*, 68 F.3d at 1221.

    B.    <u>Discrimination Framework</u>.

    As relevant to Henneman's claims in this action, the American's with Disabilities Act (ADA) provides:

> (a) General rule
>
> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.
>
> (b) Construction
>
> As used in subsection (a) of this section, the term "discriminate against a qualified individual on the basis of disability" includes--
>
> . . . (5)(A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or

42 U.S.C.A. § 12112.

    The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623.

    The Washington Law Against Discrimination similarly prohibits age and disability

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 8

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

discrimination with regard to the right to obtain and hold employment. RCW 49.60.180; see RCW

49.60.030. RCW 49.60.180 provides in relevant part:

> It is an unfair practice for any employer:

> . . . (3) To discriminate against any person in compensation or in other terms or conditions of employment because of age, sex, marital status, sexual orientation, race, creed, color, national origin, honorably discharged veteran or military status, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a person with a disability:

RCW 49.60.180(3).

Both the federal and state statutes address conditions of *employment*. These discrimination

laws do not come into play after employment has ended. For the reasons explained in this brief,

an employer does not violate discrimination laws for not reinstating an employee who quits of his

own free will.

    C.    <u>Alternative Methods of Establishing Discrimination.</u>

Henneman alleges disparate treatment discrimination – that Kitsap County terminated his

employment because of his age and for having a disability. Henneman's disparate treatment claims

under the WLAD and ADA are addressed simultaneously because the methods of establishing a

prima facie case under both laws are the same. A plaintiff can opt to present a prima facie case of

discrimination using the *McDonald Douglas* burden shifting test,[3] or, alternatively, provide direct

or circumstantial evidence the defendant acted with a discriminatory motive and the discriminatory

motivation was a significant or substantial factor in an employment decision. *McGinest v. GTE

Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir.2004) (noting alternative means by which discriminatory

intent can be shown); *citing Costa v. Desert Palace*, 299 F.3d 838, 852–53 (9th Cir.2002), *aff'd*

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973).

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

by 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); *Kastanis v. Educ. Employees Credit Union*, 122 Wn.2d 483, 490, 859 P.2d 26, 30 (1993), *amended*, 122 Wn.2d 483, 865 P.2d 507 (1994) (accepting and applying the alternative ways of establishing a prima facie case); *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *and citing Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 364, 753 P.2d 517 (1988); *and Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 136, 769 P.2d 298 (1989).

Whichever method Henneman proffers in response to the County's motion for summary judgment—the *McDonnell Douglas* burden shifting test or direct or circumstantial evidence of discrimination, no genuine issue of material fact exists from which a reasonable jury could conclude Henneman was discriminated or retaliated against because of age or disability.

D.      Disparate Treatment Discrimination on Basis of Age and Disability.[4]

1.      Age Discrimination.

To establish a prima facie case of disparate treatment age discrimination in employment, the employee must show: (1) he was within the statutorily protected age group of employees 40 years of age or older, (2) he was discharged, (3) he was doing satisfactory work; and (4) he was replaced by a younger person or discharged under circumstances otherwise giving rise to an inference of discrimination. *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1146 (9th Cir. 2017); *Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cty.*, 189 Wn.2d 516, 532, 404 P.3d 464, 473 (2017); *citing Grimwood v. University of Puget Sound*, 110 Wn.2d 355, 361-364 (1988).

In *Kirby v. City of Tacoma*, 124 Wn.App. 454, 465, 98 P.3d 827, 833 (2004), a Washington court, relying on federal law, held that "[a]n actionable adverse employment action must involve a change in employment conditions that is more than an "inconvenience or alteration of job

---

[4] Henneman does not allege age or disability harassment—he specifically alleges adverse action in the form of termination.

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

responsibilities . . . such as reducing an employee's workload and pay . . ." *Id. citing DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, 192 (7th Cir.1995), *quoting Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132 (7th Cir.1993); *and citing Ray v. Henderson*, 217 F.3d 1234, 1243–44 (9th Cir.2000).

Henneman was not discharged.  As will be explained later in this brief, failing to accept rescission of a voluntary resignation is not an adverse action.  Henneman does not allege in his Complaint how his age was the cause of his voluntary resignation, and does not allege facts of direct or circumstantial discrimination.  Because he was not discharged, the County took no adverse action against him during his employment, and no facts evidence disparate treatment against him because of his age, Henneman's age discrimination claim should be dismissed.

2.      Disability Discrimination.

The elements of a prima facie case of disparate treatment disability discrimination are that the employee: (1) was disabled, (2) was qualified; and (3) suffered an adverse employment action because of his disability. *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001); *McClarty v. Totem Electric*, 157 Wn.2d 214 (2006); *Brownfield v. City of Yakima*, 178 Wn.App. 850, 873 (2014).

Henneman suffered no adverse action during his employment.  He voluntarily resigned. Henneman does not allege how a disability was the cause of his voluntary resignation.[5]  As with his age discrimination claim, because he voluntarily resigned and the County took no adverse action against him during his employment, and absent facts of direct or circumstantial discrimination based on a disability, Henneman's disability discrimination claim should be

---

[5] This brief does not address the question whether Henneman had a disability at the time of his resignation, and by not raising it here, the County does not intend to waive it as a defense.  The County believes he was not disabled within the meaning of the WLAD or ADA, but recognizing that while a genuine issue of fact on this element may exist, it is not raised at this time.

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 11

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

dismissed.

E.   Henneman's Resignation was Voluntary.

Constructive discharge is not plead in the Complaint.   However, it is relevant in determining whether Henneman suffered an adverse action in employment.   Under the law and the facts of this case, the answer is he did not.

Courts have generally considered resignations voluntary, and once the resignation is accepted, the employer has no duty to accept a rescission of the resignation. *Townsend v. Walla Walla School District*, 147 Wn.App. 620, 627 (2008) ("[W]e presume a resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge"); *Molsness v. City of Walla Walla*, 84 Wn.App. 393, 398 (1996); *citing with approval Christie v. United States*, 207 Ct.Cl. 333, 518 F.2d 584, 587 (1975) ("This court has enunciated a principle, now firmly established, for determining whether a resignation is voluntarily tendered. The element of voluntariness is vitiated only when the resignation is submitted under duress brought on by [the employer's action").

An employee may rebut the presumption of voluntariness by showing the resignation was prompted by duress caused by the employer or the employer's oppressive actions. *Townsend v. Walla Walla School District*, 147 Wn.App. at 627-628; *citing Molsness v. City of Walla Walla*, at 398. "But duress is not measured by an employee's subjective evaluation of a situation, and an undesirable work situation does not, in itself, obviate the voluntariness of a resignation." *Townsend v. Walla Walla School District*, at 628 (*citing Molsness and others*).   Constructive discharge involves "deliberate acts by the employer that create intolerable conditions, thus forcing the employee to quit or resign." *Townsend*, at 628.

To prove constructive discharge, an employee must show (1) the employer deliberately made the employee's working conditions intolerable, (2) a reasonable person would be forced to

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT (CASE NO. 3:17-CV-05066-RBL), PAGE 12

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

resign, (3) the employee resigned solely because of the intolerable conditions, and (4) the employee suffered damages. *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn.App. 131, 149, 265 P.3d 971, 980–81 (2011); *citing Campbell v. State*, 129 Wn.App. 10, 23, 118 P.3d 888 (2005). "An employee's frustration, and even receipts of direct or indirect negative remarks, is not enough to show intolerable working conditions." *Crownover v. State ex rel. Dep't of Transp.*, 165 Wn.App. at 149; *citing Washington v. Boeing Co.*, 105 Wn.App. 1, 10, 19 P.3d 1041 (2000). "A resignation will still be voluntary when an employee resigns because he or she is dissatisfied with the working conditions." *Crownover, supra*, citing *Binkley v. City of Tacoma*, 114 Wn.2d 373, 388–89, 787 P.2d 1366 (1990). *See also Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn.App. 630, 638, 700 P.2d 338, 343 (1985) ("A voluntary resignation occurs when an employee abandons the employment because of a desire to leave, including such a desire motivated by a dissatisfaction with working conditions. Even when circumstances exist that would justify a finding of discharge, an employee's resignation may be voluntary if it was not prompted by the employer's oppressive actions"); *citing* 56 C.J.S. Master and Servant § 40(a) (1948). A withdrawal of a resignation or an attempt to do so *may* vitiate the element of voluntariness if other evidence of constructive discharge exists. *See Micone v. Town of Steilacoom Civil Serv. Comm'n*, 44 Wn.App. 636, 642, 722 P.2d 1369, 1373 (1986) (applying constructive discharge standards), *disapproved of on other grounds by Riccobono v. Pierce Cty.*, 92 Wn.App. 254, 966 P.2d 327 (1998).

The standard for constructive discharge is the same under federal law. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 2351, 159 L. Ed. 2d 204 (2004) (Holding that the inquiry is objective: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?"); *citing* 1 B. Lindemann & P. Grossman, Employment Discrimination Law 838-839 (3d ed.1996) and C. Weirich et al.,

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

2002 Cumulative Supplement to Lindemann & Grossman 651-652, and n. 1 (collecting cases).

The Ninth Circuit has held that the intolerable conditions requirement is a high standard. *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.2000) ("[C]onstructive discharge occurs when the working conditions deteriorate, as a result of discrimination, to the point that they become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer."). *See also Hardage v. CBS Broadcasting, Inc.*, 427 F.3d 1177, 1184 (9th Cir. 2005), *as amended by* 433 F.3d 672 and 436 F.3d 1050 (9th Cir. 2006), *cert. denied* 549 U.S. 812 (2006) ("[T]o survive summary judgment on a constructive discharge claim, a plaintiff 'must show there are triable issues of fact as to whether a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions'"); *quoting Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir.1994); *and citing Pennsylvania State Police v. Suders*, 542 U.S. at 134; 124 S. Ct. at 2347. Further, plaintiff must demonstrate the intolerable and discriminatory conditions continue up to the point when he or she quits the job. *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465-66 (9th Cir.1994); *Schnidrig v. Columbia Machine, Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996) (To establish he was constructively discharged, a plaintiff must at least show some aggravating factors, such as a continuous pattern of discriminatory treatment); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F.Supp.2d 151, 168 (S.D.N.Y.2006) (noting that employee's request for reinstatement established that working conditions were not intolerable).

Thus, any subjective belief that Henneman had no choice but to resign is irrelevant. There must be evidence Henneman was subjected to extraordinary, egregious, and intolerable discriminatory working conditions brought on by the County's actions.

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

No intolerable conduct is alleged in the Complaint, and no competent evidence exists to establish that a constructive discharge claim exists in this case.   During his employment, Henneman became "stressed-out" in performing the background investigator duties, and when the County understood he did not want to perform them any longer they were removed.  Of his own volition he sought, and was approved for, FMLA leave after the incident on October 6, 2014 when, at the recommendation of the on-duty mental health professional, he was let off for the day so he could consult with his personal health provider.  Indeed, Henneman's health care provider certified he had a serious health condition which qualified him for FMLA leave.  He was absent from the workplace on leave through January 2.  He asked for and was granted light duty when he returned to work as an accommodation.  He worked without incident until January 13 when he voluntarily submitted his resignation.

The following facts demonstrate Henneman's resignation was indeed voluntary: (1) on January 9, Henneman drafted a resignation letter at work and emailed it to his personnel address; (2) the resignation submitted to the Sheriff was a prepared typed letter; (3)  Henneman drafted his resignation four days before he submitted it; (4) Henneman discussed his resignation with coworkers before he submitted it to the Sheriff; (5) Henneman pre-arranged to meet with the Sheriff at 4:00 p.m. on January 13 to personally deliver his resignation letter; (6) during Henneman's discussion with Chief Newlin and Lieutenant Elton approximately one and one-half hours prior to his meeting with the Sheriff, Henneman was not "wavering or undecided in any fashion . . . [he] was resolute"; (7) at the meeting with Newlin and Elton, Henneman said he was to meet with the Sheriff at 4:00 p.m. "so that he had the 'chance to thank the Sheriff for the opportunities' he has had while employed at the County"; (8) Henneman informed Newlin and Elton that he did not intend to work in the law enforcement arena any longer; (9) at the conclusion

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros

of the meeting with Newlin and Elton, although Henneman became tearful, he spoke of his plan to "find the tough guy" that he "had lost," stating that somewhere in his career he had changed and that the "tough guy" he once knew was lost and he wanted to regain that strength; (10) he told Newlin and Elton that he had thought long and hard [about the decision to retire]; (11) he asked that he be issued a retirement card; (12) during the meeting with the Sheriff on January 13, Henneman said that over the past several months he realized it was time for him to retire, the job was not like it was before, he was not happy continuing to work in this profession, he was tired of the job, he was dissatisfied in what he was doing, found himself being disenchanted and was in fact "disgruntled" with his current circumstances; and (13) he told the Sheriff that he was excited to look for new opportunities outside of law enforcement and shared his plans to begin training as a long haul truck driver.

At no time during the meetings on January 13 did Henneman mention a disability or attribute his resignation to a disability. While he was no longer happy working as a corrections officer, Henneman did not mention that the working conditions were intolerable, and the record contains no evidence Henneman was burdened with intolerable, discriminatory working conditions at the time he submitted his resignation. He was informed on October 6 (the day of the "incident") that the background investigator duties would be removed, and he did not perform them again. When he returned to work, he was placed on light duty as he requested. There is no evidence of objectionable incidents occurring before he submitted his resignation.

Two incidents occurred *after* Henneman submitted his letter of resignation, which Henneman may point to as evidence of intolerable working conditions. On January 17, four days after Henneman submitted his resignation letter, Lieutenant Penelope Sapp spoke with Henneman regarding his assignment to swing shift. Another corrections officer had been released from light

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 16

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

duty assignment on the graveyard shift so Henneman could return to graveyard, which is the shift he bid for. Henneman told Sapp that for family reasons, he wanted to remain on swing shift until shift change. She informed him he would need to return to graveyard on January 23, because that was the shift he bid, and he said he understood.

On January 19, three hours before his shift, Henneman called and asked to take the day off using annual leave. The on-duty sergeant responded that the shift was closed at minimum staffing and asked whether he wanted to take sick leave. Henneman responded that he only had one day of sick leave and preferred not to use it. He then started to cry, he said he was having a really hard time and wanted to get the night off. He asked to speak with peer support, and as the sergeant was a designated peer support they spoke for a while, and Henneman calmed down. The sergeant informed Sapp about Henneman's request for sick leave, who called and told Henneman that the only way he could get off work was to use sick leave. Henneman said he did not want to use sick leave because he did not want to stay home alone. His wife and son were at his mother-in-law's and he wanted to be with his family because they were only support. Sapp said he could spend the time at his mother-in-law's while on paid sick leave.

His transfer to the graveyard shift—which he bid for, and requiring him to use sick leave rather than annual leave, occurred after he submitted his resignation, so they should be irrelevant to rebut the presumption his resignation was voluntary. Moreover, these two incidents do not rise to the level of egregious conduct necessary to establish constructive discharge.

Because Henneman is unable to show he was constructively discharged, he cannot meet his burden of establishing an adverse employment action, and his age and disability disparate treatment claims should be dismissed.

F.      <u>Henneman's Voluntary Quit Obviated the Obligation to Engage in the Interactive Process or Accommodate a Disability.</u>

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 17

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

Henneman claims Kitsap County took adverse action against him when it failed to accommodate his disability by failing to engage in the interactive process with him and terminating him for having a disability. Complaint, Dkt. 1-3, pp. 4-5, §§3.14-3.19. As with his disparate treatment claims, Henneman's failure to accommodate claims under the WLAD and ADA are addressed simultaneously because the methods of establishing a prima facie case under both laws are the same.

Under the ADA and WLAD, the duty of an employer to reasonably accommodate an employee's disability does not arise until the employee gives the employer notice of his disability. *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir.2000) (en banc), *vacated on other grounds*, *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002); *Ferguson v. Wal-Mart Stores, Inc.*, 114 F.Supp. 2d 1057, 1068–69 (E.D. Wash. 2000); *citing Goodman v. Boeing Co.*, 127 Wn.2d 401, 408–09 (1995); *and Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171–72 (10th Cir.1999) (the reasonable accommodation requirement ordinarily begins with "the employee providing notice to the employer of the employee's disability and any resulting limitations"). "This notice then triggers the employer's burden to take 'positive steps' to accommodate the employee's limitations." *Ferguson v. Wal-Mart Stores, Inc.*, 114 F.Supp. 2d at 1068-1069; *quoting Goodman v. Boeing*, 127 Wn.2d at 408; *see also Smith*, 180 F.3d at 1172 (noting that the employer's responsibilities are triggered by appropriate notice by the employee).

Nothing about Henneman's behavior after he returned to work on January 2 or when he resigned his employment on January 13 would give rise to a notice of the need to engage in the interactive process. Before he quit, the County granted all of Henneman's requests for accommodation: removing his background investigator duties at his request, granting his FMLA request, granting his request to extend his leave beyond December 29 when his FMLA allotment

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

expired, and granting his request for light duty in the control room.

Henneman apparently claims, or is likely to claim, his disability caused him to resign. Courts have held that "[c]onduct resulting from the disability . . . is part of the disability and not a separate basis for termination." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138 (2004) (en banc), *abrogated on other grounds by Mikkelsen v. Public Utility District No. 1 of Kittitas County*, 189 Wn.2d 516 (2017); *citing Humphrey v. Memorial Hospitals Association*, 239 F.3d 1128, 1139–40 (9th Cir.2001); *Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007); *citing Riehl v. Foodmaker, Inc.*, *supra*. "[W]here an employee demonstrates a causal link between the disability-produced conduct and the termination, a jury must be instructed that it may find that the employee was terminated on the impermissible basis of her disability." *Gambini v. Total Renal Care, Inc.*, 486 F.3d at 1093.

Whether an employer's refusal to reinstate an employee who claims his disability caused him to resign violates disabilities laws was addressed in *Wooten v. Acme Steel Co.*, 986 F. Supp. 524, 525–26 (N.D. Ill. 1997). The specific issue there was the same as presented by Henneman: "[D]oes an employer's refusal to reinstate an employee who quit during an alleged episode of depression violate the ADA?" The plaintiff in *Wooten* claimed his employer's conduct in denying him reinstatement constituted two types of discrimination: (1) failure to reasonably accommodate plaintiff's disabling depression, and (2) disparate treatment. *Wooten v. Acme Steel Co.*, 986 F. Supp. at 526 ("Specifically, Wooten's reasonable accommodation claim alleges that he is entitled to reinstatement as a reasonable accommodation for his depression, and that Acme's refusal to do so discriminated against him because of his disability").

The court in *Wooten* reasoned that the ADA speaks only in terms of working conditions and adjustments to them during employment; it says nothing about having to accommodate the

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

employee with a change in the employment relationship itself.  The ADA defines "reasonable accommodation" as follows:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9).

Thus, held the *Wooten* court, the statute does not contemplate reinstatement after quitting as a reasonable accommodation.  *Id.* at 528–529; *citing Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (7th Cir.1995) (Rejecting police officer's request for "[a] second chance" as an accommodation after being fired for neglecting to monitor his diabetes and driving his squad car erratically when he experienced the resulting diabetic reaction—such a request was not for an accommodation as envisioned in the ADA, "[t]he employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work"); *and citing Stauffer v. Bayer Corp.*, 1997 WL 588890, at *4, *11 (N.D.Ind. July 21, 1997) (An employee who resigned right after receiving a bad review and during a period when her adjustment disorder rendered her "out of [her] mind" was not entitled to reinstatement as a reasonable accommodation, because asking for her job back was not an "accommodation," but rather a request for a "second chance" at her job, something the ADA does not require an employer to provide).

For the *Wooten* court, it did not matter that the departures of the employees in both the *Stauffer* and *Siefken* cases were due in part by factors other than their disabilities—in *Stauffer*, the bad review, and in *Siefken*, the failure to control a "controllable disability"—whereas Wooten's

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

job performance was never in question and his resignation was driven solely by his uncontrollable depression. "But that does not alter the fundamental principle driving these decisions: that the ADA's reasonable accommodation provisions refer to changes in 'ordinary work rules, facilities, terms, and working conditions,' not altering the employment relationship itself." *Wooten* at 529.

The *Wooten* court also reasoned: "[t]he only accommodation that the complaint can fairly be read to request consistent with Wooten's allegations about his uncontrollable depression is reinstating him whenever he resigns during a depressive episode. We cannot conclude that the ADA requires such extreme measures." *Id.*

The *Wooten* court also rejected the plaintiff's argument that the employer failed to engage in the interactive process, because the plaintiff never requested a reasonable accommodation in his employment conditions, either before or after his termination. *Id.* at 531. Here, the County granted all of Henneman's requests made before he submitted his resignation—removal from the background investigator position, FMLA leave, extension of leave when his FMLA allotment was exhausted, and light duty upon his return to work.

Another case with facts similar to those presented here is *Featherstone v. S. California Permanente Med. Grp.*, 10 Cal.App. 5th 1150, 1154–55, 217 Cal. Rptr. 3d 258, 263 (Ct. App. 2017), *review denied* (July 12, 2017). In that case the employee alleged a temporary disability caused by a medication reaction which "altered [her] mental state." While in the altered mental state, the employee resigned—first, orally in a telephone conversation with her supervisor and then, a few days later, she confirmed her resignation in writing in an email to her supervisor. A few days after confirming her resignation in writing, the employee requested the employer allow her to rescind her resignation. After considering the employee's request, the employer declined to do so. The employee then sued, alleging her employer acted with discriminatory animus by

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

refusing to allow her to rescind her resignation. *Featherstone*, 10 Cal.App. 5th at 1154-1155.

In *Featherstone*, the California Court of Appeals upheld summary judgment dismissal of her claim because absent evidence of constructive discharge or contractual obligation, refusal to allow rescission is not an adverse employment action under California employment discrimination laws. *Featherstone*, 10 Cal. App. 5th at 1161-1162 ("an adverse employment action is one that affects an employee, not a former employee, in the terms, conditions or privileges of his or her employment, not in the terms, conditions or privileges of his or her unemployment").

Numerous other cases have concluded that accepting an employee's voluntary resignation, and failure to accept rescission of a resignation, are not adverse actions. *Curby v. Solutia, Inc.* 351 F.3d 868, 872 (8th Cir. 2003) ("Because she resigned, Curby also cannot show she suffered an adverse employment action. An employee cannot submit a resignation and then claim the employer's acceptance of the resignation is an adverse employment action"); *citing Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 447 (6th Cir. 1999) ("When an employee voluntarily resigns, he cannot claim that he suffered an adverse employment decision under the ADA or the FMLA"); *citing Keever v. City of Middletown*, 145 F.3d 809, 813 (6th Cir.1998) (affirming lower court's decision that an employee who voluntarily resigned did not suffer an adverse employment decision under the ADA); *MacLean v. City of St. Petersburg*, 194 F.Supp.2d 1290, 1299 (M.D.Fla. 2002) (unless "the employer forces the [employee's] resignation by coercion or duress" or "obtains the resignation by deceiving or misrepresenting a material fact," an employee's resignation is "presumed to be voluntary," and, therefore, the employer's "failure to accept [the employee's] rescission of her voluntary resignation [is] not an adverse employment action").

The above cases demonstrate Kitsap County that was not legally required to engage in the interactive process with Henneman because it was not required to reinstate his employment as an

**TINA R. ROBINSON**
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

accommodation of a disability and failure to reinstate him was not an adverse action. So, his claims of disparate treatment discrimination, failure to engage in the interactive process, and failure to accommodate should all fail.

G.   No Adverse Action So No Retaliation Under the WLAD.

Henneman also claims retaliation under the WLAD for having a disability, for requesting a reasonable accommodation, and because of his age.

"The WLAD prohibits retaliation against a party asserting a claim based on a perceived violation of his civil rights or participating in an investigation into alleged workplace discrimination." *Alonso v. Qwest Commcications Co., LLC*, 178 Wn.App. 734, 753–54, 315 P.3d 610, 620 (2013); *citing* RCW 49.60.210. To establish a prima facie retaliation case, a plaintiff must show: (1) he engaged in statutorily protected activity, (2) his employer took an adverse employment action against him; and (3) there is a causal link between the activity and the adverse action. *Alonso v. Qwest Communications Co., LLC*, 178 Wn.App. at 753-745, *citing Short v. Battle Ground Sch. Dist.*, 169 Wn.App. 188, 205, 279 P.3d 902 (2012).

The only statutorily protected activity Henneman engaged in are requesting and taking FMLA leave, requesting his leave be extended to January 2 after his FMLA allotment expired, and requesting a light duty assignment for 30 days. As his requests were granted, he can point to no adverse action before he submitted his resignation. And for the reasons explained previously concerning constructive discharge, where intolerable working conditions are absent, failure to accept an employee's request for reinstatement following a resignation is not an adverse employment action. His retaliation claims should also be summarily dismissed.

IV.   CONCLUSION

Kitsap County took Henneman at his word when he resigned: it was time for him to retire,

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 23

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros

the job was not like it was before, he was not happy continuing to work in this profession, he was tired of the job, he was dissatisfied in what he was doing, he found himself being disenchanted and was in fact "disgruntled" with his current circumstances, and he was excited to look for new opportunities outside of law enforcement.   No genuine issue of material fact exists showing that Henneman was not discriminated or retaliated against because of his age or disability, no intolerable working conditions forced him to resign, and the County was not obligated to accept rescission of his resignation as an accommodation of a disability.   And, given the fact that Henneman was distressed and dissatisfied enough to resign once, he could easily do it again.   All of his claims should be dismissed.

Respectfully submitted this 5th day of April, 2018.

TINA R. ROBINSON
Kitsap County Prosecuting Attorney


/s/ Jacquelyn M. Aufderheide
JACQUELYN M. AUFDERHEIDE, WSBA No. 17374
Chief Deputy Prosecuting Attorney
NICHOLAS J. KIEWIK, WSBA No. 47385
Deputy Prosecuting Attorney
Attorneys for Defendant Kitsap County

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992   Fax (360) 337-7083
www.kitsapgov.com/pros

1

CERTIFICATE OF SERVICE

2

3       I certify that on April 5, 2018, I electronically filed the foregoing document with the
Clerk of the Court using the CM/ECF system which will send notification of such filing to the
following:

4

5                       Patrick B. Reddy
                        Email: reddyp@emeryreddy.com
6                       Amanda V. Masters
                        Email: amanda@emeryreddy.com
7                       Emery Reddy, PLLC
                        600 Stewart St., Ste. 1100
8                       Seattle, WA 98101

9

10      SIGNED in Port Orchard, Washington this 5th day of April, 2018.

11

12

13                                              Batrice Fredsti, Legal Assistant
                                                Kitsap County Prosecutor's Office
14                                              614 Division Street, MS-35A
                                                Port Orchard WA  98366
15                                              Phone: 360-337-7032

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT KITSAP COUNTY'S MOTION FOR SUMMARY JUDGMENT
(CASE NO. 3:17-CV-05066-RBL), PAGE 25

TINA R. ROBINSON
Kitsap County Prosecuting Attorney
614 Division Street, MS-35A
Port Orchard, WA 98366-4676
(360) 337-4992  Fax (360) 337-7083
www.kitsapgov.com/pros