1
2
3
4
5
6
7
8
9
10
11
12
13

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS HENNEMAN,

               Plaintiff,

    v.

KITSAP COUNTY,

               Defendant.

CASE NO. C17-5066 RBL

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

THIS MATTER is before the Court on Defendant Kitsap County's Motion for Summary Judgment [Dkt. #16]. Plaintiff Dennis Henneman was employed as a Corrections Officer and Background Investigator by Kitsap County. The job duties caused Henneman substantial stress and he voluntarily resigned in January 2015. Henneman soon had misgivings about his decision to resign, but Kitsap County declined to reinstate him. Henneman filed the present lawsuit alleging Kitsap County discriminated and retaliated against him in violation of the Washington Law Against Discrimination (WLAD) and the Americans with Disabilities Act (ADA). Dkt. 1-3. Kitsap County moves for summary judgment on all claims, arguing that Henneman voluntarily resigned from his position, that the County did not take any adverse employment action, and that the County was under no obligation to reinstate Henneman once his resignation was accepted.

Henneman contends that he tendered his resignation during a depressive episode and that there are disputed issues of material fact which preclude summary judgment on his claims. Because the Court would not be aided by oral argument, it decides the motion on the parties' written submissions.

## I. BACKGROUND[1]

Dennis Henneman began working as a Corrections Officer for Kitsap County in 1990. In April 2011, Henneman was selected for a specialty position as a Background Investigator, performing background checks on individuals who applied for employment with the Kitsap County Sheriff's Office. Dkt. 21 at 5. Henneman struggled with the job for various reasons, and in October 2014, Henneman indicated to co-worker Shawn Buzzell that he was experiencing work-related stress and feeling depressed. While discussing his depression, Henneman made reference to a colleague who had recently committed suicide. Dkt. 19 at 7; Dkt. 27 at 2. Buzzell, who was also the Vice President of the Correctional Officers Guild, was concerned enough by Henneman's comments that he informed his supervisor. Lieutenant Roxane Payne followed up with Henneman, who denied being suicidal, but became emotional during the conversation. Dkt. 19 at 9.

Henneman subsequently met with John Perona, the County's on-duty mental health professional. Dkt. 29. Henneman indicated that he was under an intense amount of stress related to both his work and his personal life. *Id*. at 3–4. Henneman told Perona that he was "burned

---

[1] There are numerous minor discrepancies in parties' factual recitations (i.e. whether Henneman applied for or was assigned to the background investigator position, whether Henneman referenced a co-worker who had previously committed suicide in making comments to Buzzell about being depressed, and if Henneman was informed that it was optional for him to meet with mental health professional). These factual disputes are irrelevant to the Court's analysis and do not create a dispute of material fact precluding summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986).

out" and wished to return to his old job as a "pod officer." *Id*. Perona opined that Henneman was suffering from a depressive disorder and recommended that Henneman be transferred off of background investigations. Perona also recommended that Henneman follow up with his personal physician to address his depression. *Id*. at 4.

After consulting with Perona and Corrections Chief Ned Newlin, Lt. Payne informed Henneman that he would be relieved from his position as a background investigator and would return to a traditional "operations" assignment. Dkt. 19 at 10; Dkt. 27 at 3. Payne indicated that before Henneman could resume working, he needed a note from his physician clearing him to return to work. *Id*.

Henneman subsequently requested and took a leave of absence under the Family Medical Leave Act (FMLA) from October 6, 2014 through December 24, 2014. Dkt. 20. Henneman and his health care provider requested an extension of his FMLA leave to January 2, 2015, and that he be assigned to light duty upon his return. Both requests were approved and Henneman returned to a light duty assignment in the control room at the Kitsap County jail on January 2.

Henneman worked without incident upon his return to light duty but continued to struggle emotionally. Dkt. 16 at 4; Dkt. 25 at 7. Henneman drafted a resignation letter at work after his first week back. Dkt. 17 at 6. Henneman also had a conversation with a fellow corrections officer about putting in his retirement notice. Dkt. 18 at 11. On January 13, 2015, Henneman met with Chief Newlin and Lieutenant Genie Elton at the start of his shift to inform them of his decision to retire. Later that afternoon, Henneman met with Kitsap County Sheriff Gary Simpson and formally submitted his letter of resignation. Dkt. 27 at 7. The letter is straightforward:

> This is my Notice of Resignation (retirement) with my final day of work being 27, January 2015.

At this time I am retiring from Law Enforcement but will not be drawing my retirement account. I do plan to continue working in a different line of work.

I thank you for the opportunity you have given me to be employed as a Corrections Officer for the people of Kitsap County.

At this time I wish that my Resignation not be disseminated to my fellow officers.

Thank you,

[signed]

Dennis Henneman

KCSO 1447

Dkt. 17 at 8. Sheriff Simpson accepted Henneman's resignation. *Id.* at 14.

Two days later, Correctional Officers Guild President Ken Watkins emailed Sheriff Simpson indicating that Henneman wished to rescind his resignation and requested a meeting to discuss the matter. On January 21, 2015, Henneman followed up with a letter to Simpson formally requesting to rescind his resignation. Dkt. 17 at 12. The letter indicated that after additional consideration and discussion with his family, Henneman had decided it was imprudent to retire. *Id.* Simpson met with Henneman and Watkins the next day. Simpson memorialized the meeting in a letter and explained that he would discuss Henneman's request for reinstatement with Chief Newlin, but clarifying that Henneman should proceed with the expectation that his last day would be January 27. On January 26, Henneman sent a letter to Simpson "request[ing] that you reinstate my employment, as a reasonable accommodation for my disability." Dkt. 17 at 17. On February 4, 2015, Chief Newlin sent a letter to Henneman denying his request for reinstatement. "We respected your decision to resign, as you presented your decision as something you had given considerable thought to and had even developed plans for your future employment. . . . After careful consideration of your request for reinstatement, I have determined that this course of action is not in the best interest of the Sheriff's Office[.]" Dkt. 21 at 9–10.

1    After filing a grievance, Henneman filed the present lawsuit in Superior Court. Kitsap

2  County timely removed the case invoking this Court's federal question jurisdiction. Dkt. 1.

3                                **II. LEGAL STANDARD**

4  **A.  Summary Judgment Standard**

5        Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

6  file, and any affidavits show that there is no genuine issue as to any material fact and that the

7  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

8  an issue of fact exists, the Court must view all evidence in the light most favorable to the

9  nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty*

10 *Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

11 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable

12 factfinder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether

13 the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

14 one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears

15 the initial burden of showing that there is no evidence which supports an element essential to the

16 nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has

17 met this burden, the nonmoving party then must show that there is a genuine issue for trial.

18 *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

19 issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477

20 U.S. at 323–24. "The mere existence of some alleged factual dispute between the parties will not

21 defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at

22 247–48.

23

24

## III. DISCUSSION

Henneman alleges that Kitsap County violated the WLAD and the ADA by discriminating and retaliating against him based on his mental health issues in 2014 and 2015.[2] Specifically, Henneman alleges Kitsap County subjected him to disparate treatment, failed to accommodate his disability or engage in the interactive process, and ultimately retaliated against him by terminating his employment. Dkt. 1-3 at 3–6. Kitsap County argues that it did not take any adverse employment actions against Henneman and contends that "an employer does not violate discrimination laws for not reinstating an employee who quits of his own free will." Dkt. 16 at 9. Henneman's claims under the WLAD and ADA, some of which overlap, are addressed in turn.

### A. Retaliation – WLAD and ADA

Both the ADA and the WLAD prohibit employers from retaliating against an employee for asserting a claim based on a perceived violation of the employee's civil rights or for engaging in a protected activity. *See* Wash. Rev. Code § 49.60.210; 42 U.S.C. § 12203(a). "The Ninth Circuit has recognized that the framework used to analyze Title VII retaliation claims applies equally to the ADA and the WLAD." *Hotchkiss v. CSK Auto Inc.*, 918 F. Supp. 2d 1108, 1125 (E.D. Wa. 2013) (citations omitted). "A prima facie case for retaliation under either the WLAD or the ADA requires a showing that (1) plaintiff engaged in protected activity, (2) he suffered an adverse employment action, and (3) there was a causal link between the two." *McElwain v. Boeing Co.*, 244 F. Supp. 3d 1093, 1100 (W.D. Wash. 2017) (citing *Daniel v. Boeing Co.*, 764 F. Supp. 2d 1233, 1245 (W.D. Wash. 2011)). Henneman alleges that Kitsap County retaliated against him for having a disability and for requesting reasonable accommodations for that

---

[2] Henneman has voluntarily dismissed his age discrimination claim. Dkt. 25 at 2.

disability. Dkt. 1-3 at ¶3.8, ¶3.10, ¶3.19. Kitsap County argues that Henneman was not fired but voluntarily resigned. Dkt. 33 at 6–7.

Henneman's retaliation claims are unmeritorious because they fundamentally mischaracterize his separation from Kitsap County. Even assuming that Henneman was engaged in the protected activity of requesting a reasonable accommodation under the first prong,[3] Henneman fails to show that he was subject to an adverse employment action under the second prong where he voluntarily resigned and was not constructively discharged. Additionally, it is illogical that Henneman's accommodation requests made *after* he voluntarily resigned could somehow be causally linked to his separation under the third prong.

    1.  <u>Henneman voluntarily resigned from his job as a corrections officer.</u>

"A voluntary resignation occurs when an employee abandons the employment because of a desire to leave." *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 700 P.2d 338 (Wash Ct. App. 1985). Washington courts "presume that a resignation is voluntary, and thus, cannot give rise to a claim for constructive discharge." *Townsend v. Walla Walla Sch. Dist.*, 196 P.3d 748, 752 (Wash. Ct. App. 2008). "An employee may rebut this presumption of voluntariness by demonstrating that the resignation was prompted by duress or by an employer's oppressive actions, however, duress is not measured by an employee's subjective evaluation of a situation, and an undesirable work situation does not, in itself, obviate the voluntariness of a resignation." *Id.* (internal citations omitted). "A resignation will still be voluntary when an employee resigns because he or she is dissatisfied with the working conditions." *Crownover v. State ex rel. Dep't*

---

[3] The issue of whether reinstatement is a reasonable accommodation is addressed separately in Part III.B.2.

*of Transp.*, 265 P.3d 971, 981 (Wash. Ct. App. 2011) (citing *Binkley v. City of Tacoma*, 787 P.2d 1366 (Wash. 1990)).

Although Henneman contends that he resigned in an "uncharacteristic fit of anger and without considering the consequences," Dkt. 25 at 8, and "while suffering from an aggravation of depression and post-traumatic stress syndrome," Dkt. 17 at 17, the Washington Court of Appeals has previously held that an employee's job-related anxiety and depression alone does not make his or her resignation from that job involuntary. *Crownover*, 265 P.3d at 981. Additionally, the evidence before the Court suggests that Henneman's decision to resign was not impulsive but rather carefully considered. The undisputed facts establish that Henneman discussed his desire to go to work for a trucking company with his therapist in late December. Dkt. 35 at 21. He drafted a letter of resignation at work on January 9, 2015. Dkt. 17 at 5. Later in the week, Henneman told a co-worker he was considering retiring. Dkt. 18 at 11. On January 13, Henneman set up meetings with his immediate supervisors and Sheriff Simpson to inform them of his decision to retire. In both his conversation with his supervisors and in his letter of resignation, Henneman referenced plans to pursue employment in a different line of work. Henneman conveyed the desire to work in a profession that was less stressful, but also expressed appreciation for the opportunity to work for Kitsap County. By all accounts, Henneman appeared resolute in his decision to resign from a job that he no longer enjoyed and that was causing him considerable stress. There is no genuine dispute of material fact as to whether Henneman's resignation was voluntary.

2. <u>Henneman was not constructively discharged.</u>

Given that Henneman's resignation was voluntary, the only way he can conceivably salvage his retaliation claim and demonstrate an adverse employment action is if he were constructively discharged. "Constructive discharge occurs where an employer deliberately makes

an employee's working conditions intolerable, thereby forcing the employee to resign." *Sneed v. Barna*, 912 P.2d 1035, 1039 (Wash. Ct. App. 1996). But Henneman as much as concedes that he was not constructively discharged.[4] Nothing in the record before the Court suggests Henneman's working conditions were intolerable, and his request for reinstatement would undermine any assertion to the contrary. Henneman cannot establish an adverse employment action.

3. Henneman's voluntary resignation caused the end of the employment relationship, not any request for accommodation.

Even if Henneman could establish an adverse employment action (which he cannot), his retaliation claim is also flawed in that he cannot establish the necessary causal link between requesting a reasonable accommodation and the end of his employment. Henneman tendered his resignation on January 13, 2015. After having misgivings about his decision to resign, Henneman attempted to rescind his resignation and requested that he be reinstated as a reasonable accommodation. Dkt. 17 at 12, 17. To the extent that such requests can even be considered requests for reasonable accommodations, they came *after* Kitsap County accepted Henneman's voluntary resignation. In short, his post-resignation requests for accommodation cannot be the causal link in his separation from Kitsap County.

Although Henneman alleges he was fired as retaliation for requesting a reasonable accommodation, he cannot establish an adverse employment action or any causal connection between requesting an accommodation and the end of his employment. Henneman's contention that he was terminated for requesting an accommodation of his disability mischaracterizes his

---

[4] Henneman's response brief superficially brushes aside Kitsap County's discussion of constructive discharge. *See* Dkt. 25 at 12 ("the Defendant analyzes in great detail whether Officer Henneman was constructively terminated. However, he need not prove constructive discharge but rather, whether the adverse employment actions (failure to rescind and failure to reinstate) were discriminatory in nature.").

departure. No reasonable jury could conclude that Kitsap County unlawfully retaliated against Henneman, where he resigned of his own free will. Accordingly, the motion for summary judgment is **GRANTED** and Henneman's retaliation claims under the WLAD (Claim 2) and the ADA (Claim 4) are **DISMISSED WITH PREJUDICE**.

**B. Disability Discrimination**

"Under the WLAD, a person with disability may present claims under two different theories: (i) disparate treatment; and (ii) failure to accommodate." *Delaplaine v. United Airlines, Inc.*, 518 F. Supp. 2d 1275, 1276–77 (W.D. Wash. 2007). Henneman alleges claims under both theories.

1. Disparate Treatment - WLAD

"Disparate treatment occurs when an employer treats some people less favorably than others because of race, color, religion, sex, or other protected status." *Alonso v. Qwest Communications Co., LLC*, 315 P.3d 610, 615 (Wash. Ct. App. 2013). Henneman alleges that Kitsap County "treated [him] differently because of both a perceived disability and an actual disability[.]" Dkt. 25 at 12. A plaintiff may establish a prima facie case of disparate treatment by offering direct evidence of an employer's discriminatory intent, or by satisfying the *McDonnell Douglas* burden-shifting test[5] which gives rise to an inference of discrimination. *Alonso*, 315 P.3d at 616. Henneman contends that he can establish his disparate treatment claim under either test. Dkt. 25 at 13.

a. *Henneman fails to show direct evidence of discriminatory motive.*

"Under the direct evidence test, a plaintiff can establish a prima facie case of disparate treatment by providing direct evidence that (1) the defendant employer acted with a

---

[5] *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).

1  discriminatory motive and (2) the discriminatory motivation was a significant or substantial

2  factor in an employment decision." *Alonso*, 315 P.3d at 616 (citing *Kastanis*, 859 P.2d 26, 30

3  (Wash. 1993)). "Direct . . . evidence includes discriminatory statements by a decision maker and

4  other smoking gun evidence of discriminatory motive." *Fulton v. State Dep't of Soc. & Health*

5  *Serv.*, 279 P.3d 500, 507 n.17 (Wash. Ct. App. 2012) (internal quotations omitted). Examples of

6  direct evidence of discrimination include a supervisor's discriminatory remarks, harassment, or

7  bullying directed towards an employee based on a protected status. *See e.g., Alonso*, 315 P.3d at

8  616 (supervisor used racial slurs and made discriminatory remarks based on employee's national

9  origin, disability, and status as a veteran). Henneman cannot satisfy either prong of the direct

10 evidence test.[6]

Henneman's proffered direct evidence of discrimination is that Kitsap County required

12 him to obtain medical clearance before he returned to work, and that he was relieved of his badge

13 and gun while he was on FMLA leave to address his depression. Dkt. 25 at 15. Kitsap County

14 asserts that it had legitimate and non-discriminatory reasons for taking these actions given the

15 dangerous nature of operating a jail and Henneman's concerning statements about his own

16 mental health to his co-workers. Dkt. 33 at 5.

Viewing the evidence in the light most favorable to Henneman, there is nothing that

18 comes remotely close to direct evidence of animus or discriminatory motive by Kitsap County

19 based on Henneman's disability. Kitsap County had a legitimate and non-discriminatory basis

20 for requesting medical clearance before Henneman returned to a volatile and potentially

21 dangerous work environment as a corrections officer. Given Henneman's self-reported

22 depression, the recommendation of the on-duty mental health professional, and the safety

23

24 [6] The Court will not duplicate its prior discussion of the lack of an adverse employment decision.

concerns unique to his work in the jail, it was abundantly prudent for Kitsap County to require that Henneman obtain medical clearance before returning to work and to remove for safe-keeping his Department-issued firearm until he was cleared to return to work. Henneman fails to establish direct evidence of discriminatory intent by Kitsap County.

   b.  *Henneman cannot establish a prima facie disparate treatment claim under the McDonnell Douglas burden-shifting test.*

   Because employees often lack direct evidence of discriminatory motivation on the part of the employer, Washington courts use the *McDonnell Douglas* burden-shifting framework when analyzing discrimination claims. *Fulton*, 279 P.3d at 507; *McDonnell Douglas*, 411 U.S. at 802. Under this approach, "[a]n employee claiming disparate treatment discrimination bears the initial burden of setting forth a prima facie case." *Callahan v. Walla Walla Hous. Auth.*, 110 P. 3d 782, 786 (Wash. Ct. App. 2005). A prima facie case of disparate treatment disability discrimination has four elements: (1) the employee is disabled; (2) the employee is doing satisfactory work; (3) the employee suffered an adverse employment action; and (4) the employee was discharged under circumstances that raise a reasonable inference of unlawful discrimination. *Id.* Once the plaintiff establishes a prima facie case, an inference of discrimination arises. *Brownfield v. City of Yakima*, 316 P.3d 520, 533 (Wash. Ct. App. 2014). In order to rebut this inference, the defendant must present evidence that the plaintiff was terminated for a legitimate reason. *Id.* The burden then shifts to the plaintiff to show that the proffered reason is a pretext for discrimination. *Id.* "The plaintiff has the final burden of persuading the trier of fact that discrimination was a substantial factor in the termination decision." *Domingo v. Boeing Employees' Credit Union,* 98 P.3d 1222, 1225 (Wash. Ct. App. 2004) *abrogated on other grounds by Mikkelsen v. Pub. Util. Dist. No. 1 of Kittitas Cnty.*, 404 P.3d 464 (Wash. 2017). "In general, the plaintiff must produce

1  sufficient evidence to enable a jury to find that the adverse employment action was, more likely

2  than not, the result of unlawful discrimination." *Callahan*, 110 P.3d at 786.

3      Kitsap County argues that Henneman cannot establish a prima facie claim of disparate

4  treatment "because he voluntarily resigned and the County took no adverse action against him

5  during his employment." Dkt. 16 at 11. Henneman asserts that "Kitsap County engaged in a

6  pattern of discrimination, which began on October 6, 2014 and ultimately led to two adverse

7  employment actions: (1) refusing to rescind his retirement; and (2) refusing to reinstate his

8  position." Dkt. 25 at 12. Kitsap County counters that it "had no legal obligation to accept

9  Henneman's request to rescind his resignation or reinstate his employment." Dkt. 33 at 6.

10  Accordingly, the Court must determine whether Kitsap County's decision not to allow

11  Henneman to rescind his resignation or reinstate him constitutes an adverse employment action

12  which can support his disparate treatment claim.

13      An adverse employment action upon which a disparate treatment claim can be based

14  "means a tangible change in employment status, such as hiring, firing, failing to promote,

15  reassignment with significantly different responsibilities, or a decision causing a significant

16  change in benefits." *Crownover*, 265 P.3d at 980 (quoting *Burlington Indus., Inc. v. Ellerth*, 524

17  U.S. 742, 761 (1998)). "A tangible employment action in most cases inflicts direct economic

18  harm." *Ellorin v. Applied Finishing, Inc.*, 996 F. Supp. 2d 1070, 1093 (W.D. Wash. 2014) (citing

19  *Ellerth*, 524 U.S. at 762). "An actionable adverse employment action must involve a change in

20  employment conditions that is more than an inconvenience or alteration of job responsibilities,

21  such as reducing an employee's workload and pay. *Kirby v. City of Tacoma*, 98 P.3d 827, 833

22  (Wash. Ct. App. 2004) (internal citations and quotations omitted).

23

24

Against this backdrop, the Court considers the two adverse employment actions that Henneman alleges: (1) refusing to allow Henneman to rescind his resignation and (2) refusing to reinstate him after he resigned. Henneman's adverse employment action argument is cursory and unpersuasive; he faults Kitsap County for treating rescission and reinstatement as a single issue,[7] but otherwise fails to cite to any authority supporting the proposition that an employer's decision not to allow an employee to rescind a resignation or to reinstate that employee qualifies as an adverse employment action. Dkt. 25 at 16.

Conversely, Kitsap County cites to several cases which support its position that an employer has no obligation to allow an employee to rescind his resignation once it has been accepted or to reinstate an employee who has voluntarily quit. Dkt. 33 at 8; *see Travis v. Tacoma Pub. Sch. Dist.*, 85 P.3d 959, 964 (Wash. Ct. App 2004) (citing with approval *Armistead v. State Pers. Bd.*, 583 P.2d 744 (Cal. Ct. App. 1978) (holding that a public employee can withdraw a resignation (1) before its effective date, (2) before it is accepted, or (3) before the appointing power acts in reliance on the resignation); *Wooten v. Acme Steel Co.*, 986 F. Supp. 524 (N.D. Ill. 1997) (holding an employer was not obligated to reinstate an employee who quit during a depressive episode as a reasonable accommodation).

The Court need not wade deeply into the *McDonnell Douglas* burden-shifting analysis because Kitsap County's decision not to accept Henneman's request to rescind his resignation or reinstate his employment is not an adverse employment action. Indeed, it was Henneman's voluntary resignation which created the tangible change in his employment status, not any action taken by Kitsap County. Even if the Court construes Henneman's disparate treatment claim to

---

[7] From the outset, Kitsap County considered Henneman's request for rescission as a request for reinstatement. Dkt. 17 at 15.

allege that the failure to reinstate him was an adverse hiring decision, his claim is still fatally flawed in that he does not establish that he was discharged under circumstances that raise a reasonable inference of unlawful discrimination.[8] Accordingly, the motion for summary judgment on Henneman's disparate treatment claim (Claim 1) is **GRANTED** and that claim is **DISMISSED WITH PREJUDICE**.

2. Reasonable Accommodation and Interactive Process – WLAD and ADA

"Both the ADA and the WLAD require an employer to reasonably accommodate an employee with a disability." *Hotchkiss*, 918 F. Supp. 2d at 1123. Although "[j]udicial interpretations of the ADA and the WLAD differ slightly in the way they phrase the elements of an accommodation under the two statutes . . . the basic requirements are essentially the same." *McDaniels v. Grp. Health Co–op*, 57 F. Supp. 3d 1300, 1314 (W.D. Wash. 2014). "Both statutes require the plaintiff to show that (1) he is disabled; (2) he is qualified for the job in question and capable of performing it with reasonable accommodation; (3) the employer had notice of his disability; and (4) the employer failed to reasonably accommodate his disability." *McElwain*, 244 F. Supp. 3d at 1098–99 (citing *id.*; *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088–89 (9th Cir. 2002); *Davis v. Microsoft Corp.*, 70 P.3d 126, 131 (Wash. 2003). "The law of reasonable accommodation involves an interactive process between the employer and the employee." *Brownfield*, 316 P.3d at 534. The Washington Court of Appeals described the back-and-forth exchange of information between the employer and employee required by the interactive process:

---

[8] Additionally, Henneman has not shown that Kitsap County's reasons for not reinstating him were pretextual, nor does he highlight any evidence of non-disabled employees being reinstated.

Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible, interactive process. A reasonable accommodation envisions an exchange between employer and employee, where each party seeks and shares information to achieve the best match between the employee's capabilities and available positions. [A]n impairment must be known or shown through an interactive process to exist in fact. The employer has a duty to determine the nature and extent of the disability, but only after the employee has initiated the process by notice. In addition, the employee retains a duty to cooperate with the employer's efforts by explaining the disability and the employee's qualifications. A good faith exchange of information between parties is required whether the employer chooses to transfer the employee to a new position or to accommodate the employee in the current position.

*Id.* (citing *Frisino v. Seattle Sch. Dist. No. 1*, 249 P.3d 1044 (Wash. Ct. App. 2011) (internal citations and quotations omitted).

In his third and fourth claims, Henneman alleges that Kitsap County failed to accommodate his disability and failed to engage in the interactive process as required by the WLAD and the ADA. Henneman asserts that Kitsap County "refused to engage with him in any meaningful way, despite the fact that it knew or should have known he needed an accommodation." Dkt. 25 at 13. Specifically, Henneman alleges that Kitsap County failed to accommodate his disability "on three occasions: (1) On December 24, 2014, when it failed to engage in the interactive process when he requested an accommodation of ongoing leave; (2) when it refused to engage in the interactive process when he asked for his retirement to be rescinding [sic]; and (3) when it refused to engage in the interactive process when he asked to be reinstated." Dkt. 25 at 18. Kitsap County counters that it granted Henneman's pre-resignation accommodation requests and that reinstatement is not a reasonable accommodation. Dkt. 16 at 18–19.

      *a. Kitsap County engaged in the interactive process when Henneman requested additional leave in December 2014.*

Henneman's allegation that Kitsap County failed to engage in the interactive process when he requested ongoing leave in December 2014 is without merit. Henneman was informed

by Kitsap County that his FMLA leave would soon be exhausted. It is apparent from his medical records that Henneman understood he could get an extension of his FMLA leave and requested a letter to that effect from his therapist. Dkt. 35 at 27. Once his therapist provided the necessary letter, Kitsap County granted Henneman's accommodation request and extended his FMLA leave to January 2, 2015. *Id.*; Dkt. 20 at 15. Although Henneman disputes whether he had a conversation with Lieutenant Sapp regarding his leave status, it is immaterial to his claim because Kitsap County *granted* his requested accommodation. Dkt. 25 at 21; *Anderson*, 477 U.S. at 247–48 ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). No reasonable jury could conclude that this event was the denial of reasonable accommodation or a failure to engage in the interactive process by Kitsap County.

> b. *Kitsap County was not obligated to allow Henneman to rescind his a voluntary resignation nor was it required to reinstate him as a reasonable accommodation.*

On January 26, 2015, Henneman requested that Kitsap County "reinstate my employment, as a reasonable accommodation for my disability." Dkt. 17 at 17. Henneman alleges that Kitsap County refused to engage in the interactive process following his requests for rescission and reinstatement.[9] As with his other allegations, this claim lacks merit because reinstatement is not a reasonable accommodation under the ADA or the WLAD.

The only case directly dealing with reinstatement of employment as a reasonable accommodation cited by the parties is *Wooten v. Acme Steel Co.* The district court in *Wooten*

---

[9] Because Henneman's resignation was accepted when he tendered it on January 13, it was too late for him to rescind his resignation. *See Travis*, 85 P.3d at 964 (holding that a public employee may not rescind a resignation once it has been accepted). Kitsap County appropriately treated his request to rescind his resignation as a request for reinstatement and engaged in a dialogue about his request to remain employed with Kitsap County. Dkt. 17 at 15. Whether labeled as rescission or reinstatement, the Court's analysis is the same.

considered whether an employer's refusal to reinstate an employee who quit during an episode of depression violated the ADA. 986 F. Supp. at 525. The facts are remarkably similar to the present case. Wooten was hired as a laborer in a steel factory and was eventually promoted. *Id*. at 526. At some point during his tenure, Wooten told his foreman that he was suffering from stress and depression. *Id*. Wooten's employer referred him to counseling sessions, but he continued to struggle with depression. *Id*. During a particularly severe depressive episode, Wooten called his foreman and verbally resigned. *Id*. A few days later, Wooten explained that he tendered his resignation during a bout of severe depression and requested that the defendants disregard his resignation. *Id*. Wooten filed a lawsuit after his employer declined to reinstate him. *Id*. at 527. Like Henneman, Wooten argued the denial of reinstatement constituted disparate treatment and a failure to reasonably accommodate his disability. *Id*.

The *Wooten* court observed that the ADA's reasonable accommodation provisions typically refer to changes in "ordinary work rules, facilities, terms, and working conditions, not altering the employment relationship itself." *Id*. at 529 (citing *Siefkin v. Village of Arlington Heights*, 65 F.3d 664, 666–67 (9th Cir. 1995). The court opined that Wooten was not really requesting a reasonable accommodation but was seeking a second chance at his job, which the ADA does not require an employer to provide:

> It is clear that Wooten is not asking for a change in working conditions or facilities; instead, he characterizes his request for reinstatement as a one-time accommodation to his disabling depression. But this underscores our determination that reinstatement in this case is not an accommodation. If, as Wooten argues, his depression is uncontrollable, and can impair his judgment to the point where he involuntarily resigns, then simply reinstating him on this occasion does nothing to accommodate his ongoing, uncontrollable disability. Wooten does not point to any accommodation that would assist in managing his depression once he returns to work. The only accommodation that the complaint can fairly be read to request consistent with Wooten's allegations about his uncontrollable depression is reinstating him whenever he resigns during a depressive episode. We cannot conclude that the ADA requires such extreme measures. Furthermore, Wooten

would have no ADA claim under these circumstances because he would not meet the second element of a prima facie case, an ability to perform the essential functions of his job, because Acme could not depend on him to remain employed.

*Id*. (internal citations omitted). The district court dismissed Wooten's reasonable accommodation claim, concluding "[n]o ADA case in the Seventh Circuit has ever construed reasonable accommodation to include reinstatement following an employee's resignation." *Id*. at 528.

Henneman argues *Wooten* is "persuasive at best, and with easily distinguishable facts from this matter[.]" Dkt. 25 at 22. According to Henneman, "[t]he most crucial difference is that in *Wooten*, the Plaintiff tendered his resignation and never returned to work. Here, Officer Henneman remained an employee for the Defendant and continued to report for work after tendering his notice of retirement." *Id*.

Henneman's attempt to distinguish *Wooten* is unpersuasive for two reasons. First, Henneman fails to articulate the significance of his continued employment for the two weeks after he tendered his resignation. Courts have rejected outright the argument that employers are obliged to reinstate an employee who has voluntarily resigned but continues to work until their resignation's effective date. *See Ulrich v. City and Cty. Of San Francisco*, 308 F.3d 968, (9th Cir. 2002) (holding physician had no right to rescind his voluntary resignation after hospital accepted it simply because the request is made before the resignation's effective date); *Travis*, 85 P.3d at 964 (rejecting as immaterial an employee's argument that he could rescind his resignation prior to its effective date where the resignation had already been accepted by the school board).

Second, although Henneman is correct that *Wooten* is not binding, the decision is both directly on point and extremely persuasive. "Washington courts look to federal case law interpreting the ADA to guide their interpretation of the WLAD." *McElwain*, 244 F. Supp. 3d at 1099 (citing *Kumar v. Gate Gourmet*, 325 O.3d 193, 197 (Wash. 2014)). Moreover, Henneman

cites to no authority from Washington or any other jurisdiction which supports his argument that declining to reinstate an employee who voluntarily resigned amounts to a failure to accommodate a disability. In the absence of any authority to the contrary, the Court is inclined to adopt the well-reasoned analysis of the district court in *Wooten*. Like the plaintiff in *Wooten*, Henneman is not asking for a reasonable accommodation in his working conditions, but rather for a second chance at his job. Neither the ADA nor the WLAD contemplate reinstatement after quitting as a reasonable accommodation. *Wooten*, 986 F. Supp. at 528.

  *c.*  *Kitsap County granted Henneman's pre-resignation reasonable accommodation requests.*

   Henneman's accommodation claims are also deficient because he cannot show a failure by Kitsap County to adopt affirmative measures to accommodate his disability. The record is replete with examples of Kitsap County engaging in the interactive process and granting Henneman's requests for accommodation. As soon as Henneman informed his supervising officer of his depression, Kitsap County began the interactive process by summoning a mental health professional to meet with him. Dkt. 19 at 10. At the request of Henneman and the mental health professional, the County removed Henneman's background investigator duties. *Id*. The County granted Henneman's initial request for FMLA leave and found a light duty work assignment for him in the control room upon his return. Dkt. 18 at 5; Dkt. 34 at 5. The record demonstrates that Kitsap County endeavored to accommodate Henneman and granted all of his requests until he tendered his resignation.

   Kitsap County's history of accommodating Henneman's requests, in conjunction with the absence of any authority construing reinstatement as a reasonable accommodation are sufficient to defeat Henneman's reasonable accommodation claims. Because Henneman has failed to raise any genuine issue of material fact which would permit a jury to find in his favor on his

reasonable accommodation claims, summary judgment is **GRANTED** and those claims are **DISMISSED WITH PREJUDICE**.

## IV. CONCLUSION

The Court sympathizes with the confluence of personal and work-related stress that led to Henneman's resignation from his job as a Corrections Officer in 2015. It is plainly apparent that Henneman made a rational decision to leave a job that was causing him immense distress. The record is devoid of any evidence suggesting discrimination or retaliation on the part of Kitsap County. There are no genuine disputes of material fact and no reasonable jury could find for Henneman on his claims. Accordingly, Defendants' Motion for Summary Judgment [Dkt. #16] is **GRANTED** and all claims are **DISMISSED WITH PREJUDICE**.

IT IS SO ORDERED.

Dated this 24th day of July, 2018.

Ronald B. Leighton
United States District Judge